Benjamin Galdston, SBN 211114
BERGER MONTAGUE PC
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
T. 619.489.0300
bgaldston@bm.net

*Attorneys for Plaintiffs*
*Additional counsel listed on signature page*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### Orange County Division

| | |
|---|---|
| CHRIS ROBINSON and JONATHAN WRIGHT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSUNION RENTAL SCREENING SOLUTIONS, INC.,<br><br>Defendant. | Case No. 8:19-cv-01994-JLS-KES<br><br>**FIRST AMENDED COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

COME NOW, Chris Robinson and Jonathan Wright ("Plaintiffs") and state as follows:

### INTRODUCTION

1.     This is an action for damages and injunctive relief brought against Defendant TransUnion Rental Screening Solutions, Inc. ("Defendant" or "TURSS") pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and the California Investigative Consumer Reporting Agencies Act, CAL. CIV. CODE § 1786 *et seq.* ("ICRAA").

2.     The rights of consumers to inspect and correct consumer information sold about them are at the heart of the FCRA and the California state law.  Defendant deprives consumers of these rights by willfully failing to comply with the laws, refusing to adopt procedures to assure maximum possible accuracy with respect to the inclusion of criminal record information on the reports it sells about consumers, including by failing to obtain and use all of the publicly available personal identifying information, and failing to include the final disposition(s) of such records.

3.     Defendant compounds these errors by systematically misrepresenting the sources from which it obtains such public records, claiming in disclosures to consumers that it obtains the records directly from courthouses, when in fact it obtains these records from private vendors.  Defendant thus fails to provide consumers with all of the information in their files, including the true sources from which that information is obtained, upon request as required by law, prejudicing consumers' ability to correct errors that may stem from a vendor's records.

4.     Defendant's practices harm consumers seeking residential leases by prejudicing their landlords with inaccurate, adverse information and by depriving those consumers of valuable congressionally-mandated information.

5.     Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database and furnishes these consumer reports to landlords who use the reports to make decisions regarding whether to rent to certain consumers.

6.     Defendant falsely reported to Plaintiffs' potential landlords that Plaintiffs had been charged and convicted of criminal offenses and, as a result, Plaintiffs were denied rental opportunities.

7.     With respect to both Plaintiffs, the convictions reported belonged to another individual with a similar name.  Defendant's reporting cost Plaintiffs their

chance to rent the properties of their choice, caused them serious distress and embarrassment, and in the case of Plaintiff Robinson, caused financial loss, including forfeiture of a $1,650 deposit.

8.     Many publicly available criminal records lack meaningful personal identifying information about the offender.  Many such records only contain the offender's name, and do not contain any other identifiers, such as date of birth, age, address, or Social Security Number.

9.     Even when publicly available criminal records contain such personal identifying information, Defendant does not use it.

10.     Relying on such public records, Defendant matched Plaintiff Robinson (who has a very common first and last name) with a criminal record that did not belong to him.  Given the paucity of information in the underlying public records, the only personal identifier Defendant could have used to get a match is Plaintiff Robinson's name.

11.     With respect to Plaintiff Wright, Defendant failed to use the full date of birth of the true criminal, which is available in the public record and completely different from Plaintiff Wright's, to exclude the mis-matched criminal record from its report about Plaintiff Wright.

12.     Defendant's matching procedures are not reasonable procedures to ensure the maximum possible accuracy of the records it reports.  Defendant's failure to employ reasonable procedures resulted in Defendant's reports being inaccurate. Accordingly, Plaintiffs bring claims against Defendant under the FCRA and ICRAA.

## PARTIES AND JURISDICTION

13.     Plaintiffs are natural persons and "consumers" as protected and governed by the FCRA and ICRAA.

14.     Plaintiff Robinson is a resident of Orange County, California.

15.     Plaintiff Wright is a resident of San Marcos, California.

16.     Defendant TransUnion Rental Screening Solutions, Inc. provides consumer reports for rental screening purposes.  Defendant sells background reports containing, *inter alia*, information about consumers' criminal backgrounds to prospective landlords.  Defendant is a consumer reporting agency as contemplated by the FCRA, 15 U.S.C. § 1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

17.     Among other things, Defendant provides background checks and credit reports to landlords for their use in deciding whether to rent to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

18.     Defendant is a Delaware corporation headquartered in Colorado.

19.     The Court has personal jurisdiction over Defendant.   Defendant conducts substantial business in this District, including issuing background checks and credit reports on residents of this Division, including Plaintiff Robinson.

20.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p and CAL. CIV. CODE § 410.10.

## FACTUAL ALLEGATIONS
*Defendant's Acquisition and Use of Criminal Record*
*Information for Background Reporting*

21.     For many years, Defendant has purchased records of criminal cases ("criminal record information") from one or more private sources known as "vendors," rather than retrieving the actual underlying court records, for purposes of creating and selling tenant screening reports to prospective landlords and rental property managers.

22.     The tenant screening reports that Defendant sells to landlords and property managers about thousands of consumers each year are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d) because they are used and expected to

be used for multiple purposes governed by 15 U.S.C. § 1681b and the criminal record information included within bears on the, reputation, personal characteristics, and mode of living of the subjects of the reports.

23.    Therefore, Defendant is required by the FCRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the consumer reports it prepares relates. 15 U.S.C. § 1681e(b).

24.    Similarly, Defendant's tenant screening reports as "investigative consumer reports" within the meaning of CAL. CIV. CODE 1786.2 because the information contained therein bears upon consumers' character, general reputation, personal characteristics, and mode of living.

25.    Therefore, Defendant is required by the ICRAA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. CAL. CIV. CODE § 1786.20(b).

26.    However, Defendant does not follow such procedures, but instead fails to obtain sufficient data to provide accurate information on the reports it prepares and sells.  Defendant thus regularly and illegally includes criminal record information on reports which does not pertain to the individual who is the subject of the report.  Defendant also regularly and illegally issues reports containing so little information about the offenses associated with the consumers that the reports cannot be considered accurate under the FCRA and ICRAA.

27.    Defendant's practices and procedures regarding the reporting of criminal record information, including the failure to obtain, use, and report sufficient identifying information and information about the record at issue, cause widespread harm to consumers and to interstate commerce as a whole.

28.    This phenomenon is the result of Defendant's intentional business decisions.  The criminal record information Defendant obtains from its vendor(s) is

merely a summary which does not include all of the information or the most up to date information available at the courthouses or government offices where the records themselves are housed in conjunction with the functioning of those entities.

29.    Defendant knows that its vendor(s) make mistakes in the condensed, summary eviction information that it purchases for background reporting purposes, and that such information routinely does not contain basic personal identifying information such as date of birth, Social Security Number, or middle name, and that such information routinely does not include an accurate description of the charge and/or disposition.

30.    Purchasing distilled, incomplete civil public records information was the impetus for regulatory investigations of its corporate parent and partner, Trans Union, LLC and other consumer reporting agencies, and dozens of FCRA class action lawsuits throughout the United States, which ultimately resulted in a nationwide settlement. *Clark v. Trans Union, LLC*, No. 3:15-cv-00391-MHL, ECF No. 272 (E.D. Va. Aug. 29, 2018).

31.    For example, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that consumer reporting agencies ("CRAs") did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[1]

---

[1]    CFPB, *Supervisory Highlights*, 2.1.1 (Summer 2015), available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed July 9, 2018).

32.     Further, the CFPB expressed concern about the accuracy of public records information that the CRAs imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[2]

33.     Despite the fact that it is fully aware of the problems associated with incomplete information purchased from vendors, Defendant has not stopped acquiring and profiting from incomplete and inaccurate information.

34.     TURSS markets its services to landlords by noting that it can provide "accurate credit, criminal and eviction histories on renters."  It purports to offer "more accurate matching" using "advanced matching logic to match your rental applicants to our report histories."[3]

35.     Defendant further claims that its background screening products provide "[b]road coverage and more precise matching capabilities provide comprehensive, targeted and filtered screening results."[4]

*Defendant's Failure to Fully Disclose Information to Consumers*

36.     Additionally, and despite the clear mandate of FCRA section 1681g(a)(1)-(2) and ICRAA section 1786.28, Defendant never identifies on reports

---

[2] *Id*. at 2.1.2.

[3] *Tenant Screening | TransUnion SmartMove | Tenant Background Check*, https://www.transunion.com/product/smartmove (last visited Oct. 2, 2019).

[4] https://www.transunion.com/product/background-data-solutions (last visited Oct. 2, 2019).

or discloses to consumers the source(s) from which it obtains the criminal record information it includes on its reports to third parties.

37.     The FCRA mandates that upon request, consumer reporting agencies such as Defendant must "clearly and accurately disclose to the consumer" who requests his or her file "the sources" that supplied any "information" to the CRA about that consumer.  15 U.S.C. § 1681g(a)(2).

38.     The ICRAA requires that investigative consumer reporting agencies which include matters of public record on their reports "shall specify in any report containing public record information the source from which that information was obtained…." CAL. CIV. CODE § 1786.28(a).

39.     Identification of the true source of a CRA's information is vital to correcting errors and to informing consumers about who is furnishing important information about them.

40.     Defendant does not obtain criminal records information directly from public sources.

41.     Much of the criminal records information Defendant obtains comes from private vendors.

42.     Defendant conceals the identities of its source(s) for criminal record information, which are private vendors, including other consumer reporting agencies, that supply Defendant with incomplete information on a bulk basis.

43.     Defendant is more interested in maintaining the appearance that it obtains actual public records from true government sources and in protecting its low-cost private sources of public record data than in disclosing to consumers vital information that Congress required CRAs to disclose in FCRA section 1681g(a)(2), and which California state law requires them to provide pursuant to ICRAA section 1786.28(a).

44.     Defendant fails, as a matter of common policy and procedure, to provide consumers who request file disclosures with all information Defendant maintains about the requesting consumer, including never disclosing to consumers the source of the criminal record information collected and reported about them.

45.     Defendant's practices not only violate the FCRA and ICRAA as a matter of law, the practices exact serious consequences on rental housing applicants and interstate commerce.  Consumers are prejudiced in their ability to obtain leased housing and are deprived of complete information regarding the nature and source(s) of the information Defendant maintains and sells about them.

*The Experience of Plaintiff Chris Robinson*

46.     In June 2018, Plaintiff Robinson applied to rent a condo at Laguna Woods Village, a residential community for active adults over the age of 55.  Excited about the amenities, conveniences, and facilities, Plaintiff Robinson quickly moved to apply and put down a $1,650 deposit.

47.     On or around June 23, 2018, Laguna Woods Village (or an agent working on its behalf) conducted a background check on Plaintiff Robinson by ordering a tenant background search from Defendant.

48.     In response, Defendant furnished a consumer report to Laguna Woods Village that indicated Plaintiff Robinson had a criminal history, including a conviction for illegal dumping, i.e., littering.

49.     As a result of the criminal record contained in the consumer report attributed to him, Plaintiff Robinson was denied the opportunity to rent the condo and lost the $1,650 deposit.

50.     After Plaintiff Robinson was denied the opportunity to rent the condo, he obtained a copy of the report Defendant prepared about him, and was shocked to see that it contained a criminal conviction for a person named "Christopher A. Robinson" whose height was "6'1," age of thirty-three years old, and who had

committed the offense in Texas.

51.    Plaintiff Robinson does not have a middle name and has never lived in Texas.   Additionally, Plaintiff Robinson's height is 5'9" and he was seventy-five years old at the time he was denied housing.

52.    Based on the fact that Plaintiff Robinson does not have a middle name and is over forty years older than the person who committed this offense, it should have been immediately obvious to Defendant that the criminal offender in the reported criminal case was misattributed to Plaintiff Robinson.   Defendant also could have cross-checked Plaintiff Robinson's height, date of birth and residence.

53.    Plaintiff Robinson disputed these results with Defendant, and after a reinvestigation, Defendant created a revised report which removed the conviction which did not belong to Plaintiff Robinson.   However, Plaintiff Robinson had already lost the opportunity to rent his preferred housing, and despite a request, he was unable to receive a refund of his application fee.

54.    The report that Defendant prepared about Plaintiff Robinson did not identify the vendor from whom Defendant received the reported criminal record information.   This omission made it impossible to fix the problem at its source - Plaintiff Robinson does not and cannot know if the vendor is supplying similarly incomplete information to other consumer reporting agencies.

*The Experience of Plaintiff Jonathan Wright*

55.    On or about April 3, 2019, Plaintiff Jonathan Wright applied to rent an apartment at Bella Vista at Warner Ridge ("Bella Vista"), an apartment complex in San Diego, California.   Plaintiff Wright provided the accurate spelling of his name, complete date of birth, full social security number, and current address in connection with his application.

56.    Plaintiff Wright has never lived in or near Sacramento, California, and has no criminal record.

57.     In connection with his application, Bella Vista obtained a tenant screening report from Defendant on or about April 3, 2019.  Bella Vista provided Defendant with Plaintiff Wright's full date of birth, full social security number, and address, and Defendant provided Bella Vista with a consumer report purportedly about Plaintiff Wright for a fee.

58.     The April 3, 2019 report Defendant prepared and sold to Bella Vista about Plaintiff Wright contained a criminal record which was inaccurate in numerous respects.

59.     The criminal record Defendant attributed to Plaintiff Wright was a "CRIMINAL/TRAFFIC" offense, with Case No. 14F04623, allegedly obtained from the "CA Sacramento Superior Court."  The report does not contain any details about the nature of the charges, nor does it contain any disposition information – it simply shows a case filing date of July 9, 2014.

60.     Defendant's April 3, 2019 report represents that this offense pertains to an individual named "Jonathan C. Wright," and suggests that no additional personal identifying information is available in the public record, by stating "N/A" in the fields on the report for "DOB," "Age," "SSN," and "Residence."

61.     In reality, the publicly available records for Case No. 14F04623 in the Superior Court of Sacramento, CA include substantial personal identifying information.  Most importantly, they identify the criminal as "**Johnathon** Calvin Wright," different first and middle names from Plaintiff Wright's, and a different first name than the offender name contained on Defendant's April 12, 2019 report.

62.     Furthermore, the public record of Case No. 14F04623 contains the true criminal's full date of birth, which is completely different from Plaintiff Wright's.

63.     Additionally, these records include the details of the nature of the charges, which were for felony kidnapping, felony criminal threats, and misdemeanor resisting arrest.  Furthermore, the records show that the charges were

disposed of on May 26, 2017, and were no longer pending.

64.     Defendant failed to obtain sufficient information, available on the public record, to accurately attribute this record, or even to provide basic information such as the nature of the charges and the existence of a disposition.

65.     Defendant obtained its information regarding Case No. 14F04623 from a private vendor.

66.     The April 3, 2019 report does not identify the private vendor from which Defendant obtained the criminal record information contained therein.

67.     Pursuant to its agreement with Bella Vista, and solely as a result of the inclusion of the inaccurate criminal record on the report, Defendant recommended that Bella Vista deny Plaintiff Wright's rental application.

68.     Bella Vista in fact denied Plaintiff Wright's rental application as a result of Defendant's inaccurate and derogatory reporting.

69.     Plaintiff Wright subsequently made a request to Defendant for a copy of his complete consumer file.

70.     Plaintiff Wright thereafter received a file disclosure from Defendant, dated April 12, 2019.

71.     The file disclosure did not accurately identify the source from which Defendant obtained the inaccurate criminal record included on its report to Bella Vista.  Instead, it stated that the record "was collected from public record sources by TransUnion Rental Screening Solutions or a company TURSS hired to collect such information."  This statement misrepresents the nature of Defendant's practices by suggesting that records are obtained on an individualized basis, rather than the reality, which is that Defendant obtains criminal records on a bulk basis from private vendors, including other consumer reporting agencies.  It also fails to identify the specific source from which Plaintiff Wright's records were obtained.

72.     Because Plaintiff Wright will seek housing in the future, and because

of the ubiquity of pre-rental background checks, there is a real and immediate threat that Plaintiff Wright will suffer the same injury with respect to future rental applications.

*Facts Demonstrating That Defendant Willfully Failed*
*To Comply With The FCRA*

73.     If Defendant had reasonable procedures to ensure maximum possible accuracy, it would have determined that the criminal records it reported did not belong to Plaintiffs.

74.     Based on the paucity of information available in Defendant's reporting of the public records it misattributed to Plaintiff Robinson, it is apparent that the only personal identifier Defendant could have relied on is Plaintiff Robinson's name.  On its face, matching where the only personal identifier used is the name is unreasonable.  But, Defendant added insult to injury by ignoring the obvious mismatch between the offender, who had a middle name and different date of birth, and Plaintiff Robinson, who does not have a middle name.

75.     With respect to Plaintiff Wright, Defendant failed to obtain and/or use the date of birth of the true offender, which is available in the public record and is completely different from Plaintiff's Wright's date of birth.

76.     If Defendant had conducted its searches to require a match of the middle name or date of birth, it would have avoided the false positives.  If Defendant required that the middle names or dates of birth on the records it reported matched one another it would have avoided false positives.  If Defendant had looked for additional data on the offenders whose records were matched to Plaintiffs, it could have avoided false positives.

77.     Defendant makes it appear as if its matching criteria are more stringent than they are in actuality by putting Plaintiffs' personally identifying information above every record on the report, including the records that do not belong to them.  For example, on page 1 of the report about Plaintiff Robinson, it lists Plaintiff

-13-

Robinson's actual date of birth and address in the upper right corner of the page, but the remainder of the page is devoted to a record that is not Plaintiff Robinson's and that was not associated with that address or date of birth. This tactic is misleading, as it makes it appear to the reader as though the information in the public criminal record matches Plaintiff Robinson's date of birth and address when in reality it was matched to neither personal identifier.

78.     Other tenant screening agencies have faced governmental scrutiny for substantially similar activities. *See*, *e.g.*, *FTC v. Realpage, Inc.*, No 3:18-cv-2737 (FTC settlement with tenant screening agency which failed to comply with 15 U.S.C. § 1681e(b) because it used loose matching criteria to link potential tenants with criminal records).

79.     In addition to employing matching criteria that are obviously flawed, Defendant also fails to fully and accurately report the criminal records it includes in its reports, including so little information about the underlying criminal record itself as to make the reports misleading. For example, Defendant's report on Plaintiff Wright not only includes a misattributed record, it also fails to include even basic information about what the plea was, what the disposition was, or what fine or sentence was imposed. Including this kind of vague innuendo about supposed criminal activity is wholly inconsistent with the Fair Credit Reporting Act's requirement of maximum possible accuracy.

80.     Finally, Defendant fails to identify the vendors from which it obtained the records included on Plaintiffs' reports, both on the reports themselves and in Defendant's file disclosures to consumers.

81.     In addition to the conduct set forth above, Defendant's willful conduct is further reflected by, *inter alia*, the following:

a. The FCRA was enacted in 1970; Defendant has had 49 years to become compliant;

-14-

b. Defendant and its parent company have been repeatedly sued for misreporting public record information;

c. Defendant is a corporation with access to legal advice through its own general counsel's office and outside litigation counsel.  Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

d. Defendant knew or had reason to know that its conduct was inconsistent with FTC guidance, caselaw, and the plain language of the FCRA;

e. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

f. Defendant knew that matching individuals to criminal records using limited information would result in false positives.  However, it persisted in doing so; and

g. Defendant's violations of the FCRA were repeated and systematic.

82.    At all times relevant hereto, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and Defendant will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

## **CLASS ACTION ALLEGATIONS**

83.    Plaintiffs bring this action on behalf of the following Classes:

(a)    For Defendant's violations of Section 1681g of the FCRA (the "FCRA Disclosure Class"):

All persons residing in the United States and its Territories who, during

the period beginning five (5) years prior to the filing of the original complaint and continuing through the date of the resolution of this case, requested a copy of their consumer file from Defendant, to whom Defendant provided a response which included one or more items of criminal record information obtained from a third party vendor, and which did not identify the third party vendor source.

(b)    For Defendant's violations of Section 1681e(b) of the FCRA (the "Inaccurate Matching Class"):

All natural persons residing in the United States and its Territories who, during the period beginning five (5) years prior to the filing of the original complaint and continuing through the resolution of this case, were the subjects of a consumer report that Defendant prepared and delivered to a third party which (i) contained one or more items of criminal record information, (ii) Defendant's information about the criminal record does not include date of birth, social security number, or street-level address information that matches both the offender and the consumer, and (iii) the name of the offender on the report does not fully match the name of the subject of the report, meaning it does not match the first name, the middle name, and the last name of the subject of the report.

(c)    For Defendant's violations of Section 1786.20(b) of the ICRAA (the "California Inaccurate Matching Subclass"):

All members of the Inaccurate Matching Class residing in California at the time that they were subjects of a consumer report that Defendant prepared and delivered to a third party.

(d)    For Defendant's violations of Section 1786.28 of the ICRAA ("the ICRAA Disclosure Class"):

All natural persons residing within the State of California who, during the period beginning five (5) years prior to the filing of the original complaint and continuing through the date of the resolution of this case, were the subject of a consumer report prepared by Defendant which included one or more items of criminal record information obtained

from a third party vendor, and which did not identify the third party vendor source.

84.     Plaintiffs seek certification of all Classes pursuant to Fed. R. Civ. P. 23(b)(3) and certification of the ICRAA Disclosure Class and California Inaccurate Matching Class pursuant to Fed. R. Civ. P. 23(b)(2).

85.     The Classes are so numerous that joinder of all members is impracticable.  Although the precise number of class members is known only to Defendant, Plaintiffs aver upon information and belief that the Classes number in the thousands.

86.     There are questions of law and fact common to the Classes that predominate over any questions affecting only individual class members.  The principal questions concern whether Defendant willfully and/or negligently violated the FCRA by failing to identify its private sources of criminal record information and, by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' files with respect to criminal record information.

87.     Plaintiffs' claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

88.     Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs are committed to vigorously litigating this matter.  Further, Plaintiffs have secured counsel who are very experienced in handling consumer class actions. Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

89.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing

the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

90.     Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the ICRAA Disclosure Class and California Inaccurate Matching Class.

91.     Whether Defendant violated the FCRA can be easily determined by Defendant's policies and a ministerial inspection of Defendant's business records.

92.     A class action is a superior method for the fair and efficient adjudication of this controversy.   Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims.   The identities of the class members may be derived from Defendant's records and publicly available records.

### COUNT I
### 15 U.S.C. § 1681e(b)
### (Plaintiffs Robinson and Wright – Individually and on behalf of the Inaccurate Matching Class

93.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth at length herein.

94.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiffs and the proposed Inaccurate Matching Class by selling criminal record information without obtaining sufficient personal identifying information to adequately attribute the records, and without obtaining sufficient information to adequately identify the nature of the criminal records and their dispositions.

95.    The foregoing violations were negligent and/or willful.   Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiffs under 15 U.S.C. § 1681e(b).  *See* ¶¶ 70-78, *inter alia*, above.

96.    As a result of Defendant's conduct, Plaintiffs suffered damages including but not limited to: denial of a rental opportunity, forfeiture of deposit funds, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

97.    Plaintiffs and members of the Inaccurate Matching Class are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II
### CAL. CIV. CODE § 1786.20
**(Plaintiffs Robinson and Wright – Individually and on behalf of the California Inaccurate Matching Class)**

98.    Plaintiffs incorporate the paragraphs above.

99.    Defendant is an investigative consumer reporting agency as defined by the ICRAA, and Defendant was required to adhere to the requirements of the ICRAA.

100.   The ICRAA required Defendant to follow reasonable procedures to assure maximum possible accuracy of the information it reported.  CAL. CIV. CODE § 1786.20(b).

101.   Defendant violated this provision by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiffs.   Specifically, Defendant misidentified Plaintiffs as criminals based only on inadequate procedures for obtaining criminal record information and matching it to consumers.

102.   Because Plaintiffs will seek housing in the future, and because of the

ubiquity of pre-rental background checks, there is a real and immediate threat that Plaintiffs will suffer the same injury with respect to future rental applications.

103.   Accordingly, Plaintiffs and the California Inaccurate Matching Class are entitled to injunctive relief and to the recovery of attorneys' fees and costs.

**COUNT III**
**15 U.S.C. § 1681g(a)(2)**
**(Plaintiff Wright – Individually and on behalf of**
**the FCRA Disclosure Class)**

104.   Plaintiff Wright incorporates the paragraphs above.

105.   Defendant violated 15 U.S.C. § 1681g(a)(2) by failing to provide consumers throughout the United States, such as Plaintiff Wright, upon request, with all information in the consumers' files, including the sources of such information.

106.   The foregoing violations were negligent and/or willful.   Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff Wright and members of the proposed FCRA Disclosure Class under 15 U.S.C. § 1681g(a)(2).   *See* ¶¶ 27-43, *inter alia*, above.

107.   As a result of Defendant's conduct, Plaintiff Wright and members of the FCRA Disclosure Class suffered damages including but not limited to: denial of statutorily-mandated disclosure of information.

108.   Plaintiff Wright and members of the FCRA Disclosure Class are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT IV**
**CAL. CIV. CODE § 1786.28**
**(Plaintiffs Robinson and Wright – Individually and on behalf of**
**the ICRAA Disclosure Class)**

109.   Plaintiffs incorporate the paragraphs above.

110.   The ICRAA required Defendant to include the specific sources of

information reported any time it included public records on a report to a third party. CAL. CIV. CODE 1786.28.

111.   Defendant violated this provision by failing to include the specific source(s) of the criminal record information it sold about Plaintiffs and members of the proposed ICRAA Disclosure Class.

112.   Because Plaintiffs will seek housing in the future, and because of the ubiquity of pre-rental background checks, there is a real and immediate threat that he will suffer the same injury with respect to future rental applications.

113.   Accordingly, Plaintiffs and the ICRAA Disclosure Class are entitled to injunctive relief and to the recovery of attorneys' fees and costs.

**COUNT V**
**Cal. Bus. & Prof. Code § 17200**
**(Plaintiffs Robinson and Wright individually and on behalf of the**
**ICRAA Disclosure Class and California Inaccurate Matching Class)**

114.   Plaintiffs incorporate the paragraphs above.

115.   Defendant was required to adhere to the requirements of the California Unfair Competition Law ("UCL").

116.   Defendant's inaccurate reporting and inaccurate disclosures constituted unlawful, unfair, and fraudulent business practices.

117.   Defendant's practices were unlawful because they violate the FCRA and/or the ICRAA.

118.   Defendant's practices were unfair because it is unethical, immoral, unscrupulous, oppressive, and substantially injurious to consumers to match them to criminal records based on insufficient criteria.

119.   Defendant's practices were fraudulent because the report recipients were deceived and/or were likely to be deceived by Defendant's inaccurate representations that Plaintiffs were likely criminals.

120. The harm caused by these business practices vastly outweighs any legitimate utility they possible could have.

121. Because Plaintiffs will seek housing in the future, and because of the ubiquity of pre-rental background checks, there is a real and immediate threat that Plaintiffs will suffer the same injury with respect to future rental applications.

122. Plaintiffs and the ICRAA Disclosure and California Inaccurate Matching Classes are entitled to injunctive relief and to the recovery of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek relief as follows:

A.   Awarding actual damages, as provided by the FCRA;

B.   Awarding statutory and punitive damages as provided by the FCRA;

C.   Awarding reasonable attorneys' fees and costs, as provided by the FCRA and the ICRAA;

D.   For injunctive relief enjoining Defendant from pursuing the practices complained of above as provided by the ICRAA; and,

D.   Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiffs demand a trial by jury for all claims so triable.


Date:

BERGER MONTAGUE PC

/s/

Benjamin Galdston

E. Michelle Drake*
Joseph C. Hashmall*
BERGER MONTAGUE PC
43 SE Main Street, Suite 505
Minneapolis, MN 55414

T. 612.594.5999
F. 612.584.4470
emdrake@bm.net
jhashmall@bm.net

Devin H. Fok, SBN 256599
DHF LAW P.C.
234 E. Colorado Blvd. 8th Floor
Pasadena, CA 91101
T: (888) 651-6411
F: (818) 484-2023
devin@devinfoklaw.com

James A. Francis *
John Soumilas *
Lauren KW Brennan *
FRANCIS MAILMAN
SOUMILAS PC
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Kristi C. Kelly*
KELLY GUZZO PLC
3925 Chain Bridge Rd., Suite 202
Fairfax, VA 22030
T. 703.424.7570
kkelly@kellyguzzo.com

*application for admission *pro hac vice* forthcoming

ATTORNEYS FOR PLAINTIFFS